UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Judge John L. Kane

Civil Action No. **09-cv-01029-JLK-MJW**

**JASON ANTHONY GRABER,**

      Plaintiff,

v.

**CITY AND COUNTY OF DENVER, a municipality;**
**OFFICER SHAWN MILLER, in his official and individual capacity;**
**UNKNOWN DENVER POLICE DEPARTMENT OFFICERS 1-2, in their official**
**and individual capacities;**

      Defendants.

---

ORDER

---

Kane, J.,

      This matter is currently before me on the Motion for Summary Judgment (doc. 42) filed

by Defendants the City and County of Denver and Officer Shawn Miller in his official capacity.

Jurisdiction and venue in this Court being proper,[1] and being fully appraised of the arguments

contained in the parties' briefs, the motion is GRANTED.

/
/
/
/

---

    [1] Plaintiff's claim is brought pursuant to 42 U.S.C. § 1983.  Accordingly, jurisdiction is
proper under 28 U.S.C. §§ 1331 and 1343(a).  Furthermore, because all of the alleged events
occurred within the state of Colorado and all of the parties are residents of the state of Colorado,
venue is proper in accordance with 28 U.S.C. § 1391(b).

**BACKGROUND[2]**

On the night of March 22-23, 2008, Plaintiff Jason Graber visited downtown Denver with a group of his friends and family.  The group had dinner at the Hard Rock Café.  After dinner, the group visited Club Beta nightclub to listen to music.

At around 2 a.m, the group left the nightclub and began walking in the direction of their hotel.  Plaintiff's wife was intoxicated and needed assistance to walk.  In the process of assisting his wife, Plaintiff and a friend lawfully entered an intersection in the 16th Street Mall area. While they were crossing the street, a Denver Police Department patrol car rapidly approached and entered the intersection.  Plaintiff, still assisting his wife, raised his hand in a motion to stop or waive off the patrol car because he thought that the car might hit them.  The patrol car came to a stop about a foot or two from Plaintiff's leg.

As Plaintiff and the rest of his party continued through the intersection to the 16th Street Mall, he heard someone from the patrol car yell out and call him a "dumb ass" or "asshole."  The patrol car stopped nearby on the 16th Street Mall, and the Officers asked Plaintiff and his companions whether anyone in his group needed assistance.  Plaintiff responded that he did not need assistance, and he told the Officers that he did not appreciate being called a "dumbass."[3] The Officers then exited their vehicle, approached the group, and Officer Miller grabbed

---

[2] These facts are taken from the Plaintiff's Complaint (doc. 1) and his Response to Defendant's Motion for Summary Judgment (doc 47).  These two filings are not entirely consistent in their recitation of the facts, but I have done my best to reconcile any discrepancies in favor of the Plaintiff, and I draw all reasonable inferences in favor of Plaintiff (the non-moving party). *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[3] Presumably, this brief interaction forms the basis for Plaintiff's claim of First Amendment retaliation.

Plaintiff's neck and kicked his legs out from under him causing Plaintiff to fall and slam his knee

and elbow onto the concrete.  Plaintiff's brother then called 9-1-1 and informed the dispatcher

that Officer Miller was attacking his brother.  The dispatcher told Plaintiff's brother to remain

where he was, and informed him that another police vehicle would be in the area soon.

Plaintiff's brother then approached the Officers and asked them for their badge numbers.  The

Officers became irate and threatened to arrest Plaintiff's brother.

Believing Plaintiff to be drunk, the Officers placed him in protective custody and

escorted him to a detox van.  Once at the detox facility, Plaintiff was tested and found to have a

blood alcohol level of 0.038.  He was quickly released, and he took a taxi to his hotel.  Because

of the force used by Officer Miller in the process of his detention, Plaintiff suffered an injury to

his knee and required assistance in exiting the taxi and walking to his hotel room.  Plaintiff was

later diagnosed with a tibial plateau fracture, and he wore a knee brace for the next six months.

## PROCEDURAL HISTORY

Plaintiff brings three claims against the City and County of Denver, Officers Shawn

Miller and Tab Davis in their individual and official capacities, and two unknown officers in

their individual and official capacities.  In his first claim, Plaintiff alleges that Defendants

violated his rights under the Fourth Amendment to the United States Constitution by using

excessive force in seizing him and placing him in custody.  In his second claim, Plaintiff alleges

that Defendants violated the Fourth Amendment by seizing him without probable cause or

reasonable suspicion.  Finally in his third claim, Plaintiff alleges that Defendants violated the

First Amendment by placing him in custody in retaliation for his utterance of constitutionally

protected speech relating to objectionable police conduct.

On March 3, 2010, Plaintiff and Defendant Officer Davis stipulated to the dismissal of all of Plaintiff's claims against Defendant Officer Davis, with prejudice. On July 1, 2010, Defendants City and County of Denver and Officer Miller in his official capacity submitted the instant Motion for Summary Judgment.[4] This motion is now fully briefed and ready for my review.

## STANDARD OF REVIEW

A motion for summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(2); *Adamson v. Multi. Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). A fact is material if it could affect the outcome of the suit under governing law; a dispute of fact is genuine if a rational jury could find for the nonmoving party on the evidence presented. *Adamson*, 514 F.3d at 1145. In weighing these standards, I draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party bears the initial burden of identifying the basis for its motion and the supporting evidence it believes demonstrates a lack of genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adamson*, 514 F.3d at 1145. "Where, as here, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy this

---

[4] Defendants also seek dismissal of the claims against the "two unknown officers" named in Plaintiff's complaint for a failure to prosecute, arguing that the deadlines for joining parties and amending pleadings have passed without incident. I find this argument valid, and I grant Defendants' request. The claims against the "two unknown officers" shall be dismissed for failure to prosecute. *See* Fed. R. Civ. P. 41(b).

burden by identifying 'a lack of evidence for the nonmovant on an essential element of the

nonmovant's claim.'" *Adamson*, 514 F.3d at 1145 (quoting *Adler v. Wal-Mart Stores, Inc.*, 144

F.3d 664, 670 (10th cir. 1998)).

Once the moving party has met its initial burden, the burden shifts to the non-moving

party, and it must demonstrate more than "some metaphysical doubt" as to the material facts in

order to survive summary judgment. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Neither

unsupported conclusory allegations nor a mere scintilla of evidence, however, are sufficient to

create a genuine dispute of material fact on summary judgment. *See Mackenzie v. City & County

of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). To meet his burden of proof, the plaintiff may

only rely upon evidence setting forth facts that would be admissible at trial. *Adams v. Am.

Guarantee and Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). Although the evidence

need not be presented in a form that would be admissible at trial, "the content or substance of the

evidence must be admissible." *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268

(10th Cir. 1998) (quoting *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 485 (10th Cir. 1995)).

Accordingly, speculation, opinion, or hearsay testimony is "not suitable grist for the summary

judgment mill." *Thomas*, 48 F.3d at 485 (quotation omitted).

## ANALYSIS

It is well-settled that a municipality is a "person," subject to suit under § 1983.[5] *See, e.g.,

Dodds v. Richardson*, 614 F.3d 1185, 1201 (10th Cir. 2010) (citing *Monell v. Dep't of Social

---

[5] In their Motion for Summary Judgment, Defendants seek summary judgment only for
Plaintiff's claims against the City and County of Denver and Officer Miller in his "official
capacity." Because Plaintiff's "official capacity" claim is essentially an action against the City
and County of Denver, both claims are subject to the same standards. Accordingly, my analysis
of these claims is governed by the standards relating to municipal liability under § 1983.

*Servs.*, 436 U.S. 658, 663 (1978)).  Municipal liability is limited to situations where an alleged

unconstitutional action results from a municipal policy or custom that actually causes an injury

of constitutional dimensions.  *Monell*, 436 U.S. at 690.  In other words, Plaintiff must establish:

"(1) that a municipal employee committed a constitutional violation; and (2) that a municipal

policy or custom was the moving force behind the constitutional deprivation."  *Jiron v. City of*

*Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).

For purposes of their summary judgment motion, Defendants concede that there is a

genuine issue of material fact relating to whether Officer Miller's actions comprise  a

constitutional violation.[6]  Defs.' Mot. for Summ. J. (doc. 42) at 8.  Nonetheless, they argue that

Plaintiff has failed to establish that these alleged constitutional violations resulted from any

municipal policy or custom

As the Supreme Court noted in *Monell*, "the touchstone of the § 1983 action against a

government body is an allegation that official policy is responsible for a deprivation of rights

protected by the Constitution . . . ."  436 U.S. at 690.  Plaintiff does not contend that any official

governmental policy exists pursuant to which Officer Miller engaged in the alleged

constitutional violations.  This does not, however, end the inquiry.  Municipal liability may also

attach where a constitutional violation results from practices that are "so permanent and well

settled as to constitute a 'custom or usage' with the force of law."  *Id.* at 691.

---

[6] Notwithstanding Defendants' concession that there exists a genuine issue of material
fact as to whether the Defendant Officers' conduct violated Plaintiff's constitutional rights,
absent additional evidence or argument I will not instruct the jury on Plaintiff's First
Amendment Claim.

*Custom*

In order to establish municipal liability under § 1983 for a "custom," Plaintiff must

adequately allege and prove:

> (1)  The existence of a continuing, persistent and widespread practice of
> unconstitutional misconduct by [the City and County of Denver's] employees;
>
> (2)  Deliberate indifference to or tacit approval of such misconduct by [the City
> and County of Denver's] policymaking officials after notice to the officials of that
> particular misconduct; and
>
> (3)  That [Plaintiff] was injured by virtue of the unconstitutional acts pursuant to
> [the City and County of Denver's] custom and that the custom was the moving
> force behind the unconstitutional acts.

*Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993).  I address each of

these elements *seriatim*.

As a threshold matter, Plaintiff has failed to adduce any evidence of a custom of unlawful

seizures, unsupported by reasonable suspicion or probable cause, in violation of the Fourth

Amendment, or unlawful retaliation against the exercise of the right to free speech in violation of

the First Amendment.  He has failed to meet his burden as to these claims, and Defendants'

Motion for Summary Judgment as it relates to Plaintiff's second and third claims for relief is

GRANTED.  Accordingly, I limit my analysis to Plaintiff's claim that Defendants have a custom

of using or tolerating the use of excessive force, or both, in violation of the Fourth Amendment.

**Continuing, Widespread Practice**

A pattern of misconduct constitutes a custom when the practice is so well-settled,

longstanding, and widespread that it carries the force of law.  *Brammer-Hoelter v. Twin Peaks*

*Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S.

112, 127 (1988)).  To establish the existence of a widespread practice, plaintiffs typically present

evidence showing that a municipality has violated the constitutional rights of other people under similar circumstances. *See Carney v. City and County of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008); *Watson v. Kansas City*, 547 F.2d 690, 695 (10th Cir. 1988). Such evidence ordinarily takes two forms: the affidavits of similarly situated third parties and statistical evidence.

*Affidavits of Similarly Situated Third Parties*

In resisting summary judgment, Plaintiff may rely upon affidavits of similarly situated third parties who allege the same type of misconduct by the municipality. *See Cannon*, 998 F.2d at 878. When the allegations and factual scenarios described by third parties are "closely analogous to the circumstances in the case at bar," such affidavits may support a reasonable inference of a widespread practice of misconduct. *Carney*, 534 F.3d at 1277.

For instance, in *Cannon* the plaintiffs were arrested for disturbing the peace while protesting an abortion clinic after they refused to cover signs bearing the words "The Killing Place." 998 F.2d at 869. In order to show that the police had a custom of harassing anti-abortion protesters, the plaintiffs submitted details relating to their arrests as well as the affidavits of two individuals who alleged a pattern of similar police abuses (destroying or confiscating similar signs at protests). *Id.* at 878. The court found that the affidavits were sufficient evidence to meet the plaintiff's burden of establishing a widespread practice at the summary judgment stage. *Id.*

Plaintiff submits the affidavit of James Moore as evidence of a widespread practice of excessive use of force.[7]   Moore is a plaintiff in a separate § 1983 excessive use of force case

---

[7] Plaintiff does not offer affidavits or statements of similarly situated third parties in support of his second or third claims for relief.

against Officer Miller.  In his affidavit, Moore alleges that he was lawfully standing on a

sidewalk when Officer Miller and another Denver police officer approached him and asked for

his identification.  Moore alleges that, without any provocation, Officer Miller assaulted him to

the point that his heart stopped and CPR was required to resuscitate him.  Like Plaintiff, Moore

alleges that he committed no violation of the law, did not provoke Officer Miller or otherwise

take any action that justified the use of force, and complied at all times with Officer Miller's

directives.

Similar to Plaintiff, Moore alleges that Officer Miller used excessive, unwarranted force

in effectuating an arrest or placement into custody.  Thus, Plaintiff has demonstrated that another

individual has suffered an alleged constitutional deprivation under "closely analogous"

circumstances to his own deprivations.  Indeed, I have previously ruled that Plaintiff could

testify in Moore's § 1983 suit against Officer Miller.

*Statistical Evidence*

Plaintiff offers three forms of statistical evidence to support a finding of widespread

custom or practice of the use or tolerance of excessive force within the Denver Police

Department.[8]  First, Plaintiff cites twenty-eight excessive force civil cases brought against the

Denver Police Department in the past three years in this district.  Second, Plaintiff cites the

number of citizen/internal complaints, 753, alleging inappropriate or unnecessary use of force as

complied by the Office of the Independent Monitor for the City and County of Denver in 2007-

2009.  Finally, Plaintiff cites the five excessive force complaints lodged against Officer Miller

---

[8] Plaintiff does not offer any statistical evidence in support of his second or third claims for relief.

from February 2007 to March 2008.

Although Plaintiff may use statistics to demonstrate the existence of a widespread

practice, the number of complaints brought against a defendant does not in itself demonstrate the

existence of a widespread practice. *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008)

(finding evidence of the number of complaints brought against defendant insufficient evidence).

In order to establish the existence of a widespread practice, Plaintiff must put bare statistics in

context by showing the "normal" number of excessive use of force complaints experienced by

Defendant. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 430-31 (6th Cir. 2005) (finding

evidence of the number of cases brought against defendant insufficient because plaintiff did not

analyze merits of cases).

Plaintiff does not provide any context for these statistics, nor does he discuss the relative

merits of any of the excessive force complaints filed. Standing alone, this statistical evidence is

not sufficient to create a genuine issue of material fact relating to the existence of a widespread

custom or practice of the use or tolerance of excessive force within the Denver Police

Department. Plaintiff has, however, also submitted Moore's affidavit. Considered together,

Moore's affidavit and adequate statistical evidence, properly analyzed, could support a

reasonable inference that Defendants had a widespread practice of using excessive force and

failing to discipline officers for the use of excessive force.[9] *See Watson v. Kansas City*, 857 F.2d

---

[9] As further evidence of custom, Plaintiff submitted a variety of newspaper accounts discussing excessive force complaints in the City and County of Denver. *See* Docs. 47-10, 47-11, 47-12, and 47-15. Defendants objected, arguing that these exhibits are inadmissible hearsay which could not form the evidentiary basis for Plaintiff's resistance to the Motion for Summary Judgment. To the extent these exhibits are offered for the truth of the matter asserted, Defendant's objections are well-taken. To the extent that these exhibits show publication that public concern exists they are admissible, and I have considered them in weighing the parties'

at 692-93 (finding statistical evidence comparing arrest rates for domestic versus non-domestic

assaults, evidence of police training practices, and evidence of plaintiff's own constitutional

deprivations sufficient).

### *Deliberate Indifference*

In order to prevail on his municipal liability claim for unconstitutional use of excessive

force, Plaintiff must also demonstrate that the municipality's policymaking officials had notice

of the alleged widespread practice and acted with deliberate indifference towards the previously

alleged violations. *Gates*, 996 F.2d at 1041.

### **Policymaker**

State law governs the question of whether a municipal employee acts as a policymaker

for the municipality. *Brammer-Hoelter*, 602 F.3d at 1189 (citing *Praprotnik*, 485 U.S. at 124).

Three factors guide this determination: whether the employee is constrained by policies not of

his making, whether the decision or action is within his sphere of authority, and whether the

decision or action is subject to review. *Id. (*quoting *Randle v. City of Aurora*, 69 F.3d 441, 448

(10th Cir. 1995)).  Although this is a crucial element of a claim for municipal liability, neither

Defendants nor Plaintiff address this issue in their briefing.  Accordingly, for purposes of

deciding this motion, I do not address this issue.

---

arguments.

        Plaintiff also submitted an unauthenticated verdict form from an unrelated 1995 federal
court lawsuit.  *See* Doc. 47-13.  Defendant objected, arguing that because this verdict form was
not properly authenticated it was inadmissible and, therefore, could not be considered for
purposes of the Motion for Summary Judgment.  I find this objection unwarranted, and I have
considered this exhibit in resolving Defendants' Motion for Summary Judgment.

**Notice**

A municipality may be liable if it either had actual or constructive notice "that its action

or failure to act is substantially certain to result in a constitutional violation." *Carr v. Castle*,

337 F.3d 1221, 1229 (10th Cir. 2003).  Although Plaintiff does not allege that Defendants had

actual notice of an unconstitutional policy or custom, he may establish constructive notice by

demonstrating either "a pattern of tortious conduct" or that the municipality's act or omission

will result in a "highly predictable or plainly obvious" violation. *Id.*

Plaintiff argues that Defendant City and County of Denver had notice of Defendant

Officer Miller's persistent use of excessive force in effectuating arrests because five excessive

use of force complaints were brought against Officer Miller in the preceding thirteen months.[10]

Such evidence is only relevant to the issue of notice, however, if it would have put Defendants

on notice before the occurrence of the constitutional violation alleged by Plaintiff.  *See Bryson v.*

*City of Oklahoma City*, 627 F.3d 784, 789-90 (10th Cir. 2010) (holding that municipality's

notice of constitutional violations that occurred after the misconduct alleged in plaintiff's case

was irrelevant).

Of the five complaints cited by Plaintiff, one is Plaintiff's and one is Moore's, which

arose from events occurring *after* Officer Miller's encounter with Plaintiff.  Thus, two of the five

complaints are not relevant in this dispute because they could not have served to put Defendants

on notice *before* Plaintiff's constitutional deprivation.  Plaintiff fails to inform the Court of the

---

[10]  The evidence discussed *supra* at n.9 could also be used to support a finding that
Defendant City and County of Denver had notice of a widespread practice.  That evidence may
not be used for that purpose, however, because such use would depend upon the truth of the
matter asserted, making it inadmissible hearsay.

substance or outcome of the investigations made pursuant to the remaining three complaints.

Without more evidence, Plaintiff has not demonstrated that constructive notice can be imputed to

Defendant City and County of Denver.  This failure is fatal to Plaintiff's municipal liability

claim.

## Deliberate Indifference

Even if Plaintiff were able to show that Defendants had notice, he must show that the

municipality was deliberately indifferent towards the previous constitutional violations.

Establishing deliberate indifference to a widespread practice of misconduct requires more than a

showing of negligence or recklessness.  *McDowell v. Brown*, 392 F.3d 1283, 1291 (11th Cir.

2004).  Rather, a plaintiff must present evidence of an "obvious, deliberate" indifference.

*Thomas*, 398 F.3d at 433 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)

(overruled on other grounds)).  "[P]laintiff bears a heavy burden in proving municipal liability,

and he cannot rely solely on a single instance to infer a policy of deliberate indifference."  *Id.*

If a municipality can point to actions that it has taken to correct a widespread practice of

misconduct that it has notice of, it has not acted with deliberate indifference.  *See Rost v.*

*Steamboat Springs RE- Sch. Dist.,* 511 F.3d 1114, 1125 (10th Cir. 2008).  In *Rost,* a schoolchild

and her parent contacted the school district and alleged that the child had suffered ongoing

sexual abuse and harassment by other students.  The court noted that, by contacting law

enforcement and disciplining several students in connection with the allegations, the school

district "was aware of several discrete problems and was working to remedy them."  *Id.*

Likewise, if a municipality has policies and procedures to ensure that employees observe

"relevant federal constitutional and [state] law," the municipality is not deliberately indifferent to

citizens' constitutional rights.  *Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997).  In

*Hollingsworth*, the sheriff's department presented evidence that it trained its officers to follow

state law and notify authorities and obtain legal counsel regarding questionable or ambiguous

orders and warrants.  *Id.*  The court held that no reasonable juror could find the department

deliberately indifferent.  *Id.*

Plaintiff does not contest the validity of Defendant City and County of Denver's official

policies regarding the use of force.  Instead, he argues that Defendants have a policy of failing to

discipline officers and thereby implicitly condoning officers' excessive use of force.  In order to

establish deliberate indifference under this theory, such a policy  "must be shown by a clear and

persistent pattern."  *Thomas*, 398 F.3d at 432.  Thus, Plaintiff must reach beyond the facts of his

own case to show deliberate indifference.

Plaintiff argues that Defendant City and County of Denver was deliberately indifferent to

Defendant Officer Miller's alleged excessive use of force because it has not disciplined

Defendant Officer Miller, despite the complaints brought against him in the preceding thirteen

months.[11]  Plaintiff offers no other factual support for his deliberate indifference claim.  Plaintiff

does not allege that Defendant City and County of Denver failed to investigate the allegations,

that the investigations were deficient, or that any conclusions reached by Defendant City and

County of Denver regarding Defendant Officer Miller were unwarranted.  Plaintiff fails to show

a "clear and consistent pattern" of tolerating misconduct and essentially makes conclusory

accusations.  Without factual support, such allegations do not create a genuine issue of material

---

[11] Once again, although the evidence discussed *supra* in n. 9 could be used to support a finding of deliberate indifference, it is inadmissible for that purpose.  *See supra* n. 10.

14

fact regarding deliberate indifference.  As such, Plaintiff's municipal liability claim fails on this element.

### *Causation*

Finally, even if Plaintiff were able to show that Defendants had notice and were deliberately indifferent to an unconstitutional policy or custom, he must also demonstrate that the purported custom underlying Defendant Officer Miller's alleged unconstitutional misconduct was the "moving force" behind his injury.  *Gates*, 996 F.2d at 1041.  In other words, the municipality's custom must be the actual cause of the constitutional deprivation.  *Carr*, 337 F.3d at 1231.  This court is required to "carefully test the link" between the custom and the alleged injury.  *McDowell*, 392 F.3d at 1292.  This requirement prevents municipal liability from "collapsing into *respondeat superior* liability . . . ."[12] *Id.* (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)).

Plaintiff may establish causation either by showing that Defendant City and County of Denver failed to investigate alleged misconduct adequately or to discipline officers for alleged misconduct.  As with notice, the Tenth Circuit has noted that the "basic principals of linear time" limit the relevance of such evidence to that which precedes constitutional violations alleged by Plaintiff.  *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009).  A cover-up of or a failure to discipline for a violation cannot establish deliberate indifference for the same complained-of

---

[12] The causation requirement is essential to the determination, and limitation, of municipal liability under § 1983.  In fact, even when the Supreme Court reversed course and acknowledged the viability of municipal liability claims under § 1983, it explicitly preserved the causation requirement to avoid the imposition of *respondeat superior* liability.  For an extensive discussion and interpretation of the legislative history underlying this limitation, *see Monell*, 436 U.S. at 690-95.

violation. *Id.*

Plaintiff makes a bare, bold assertion that Defendant City and County of Denver's failure to discipline Defendant Officer Miller contributed to his constitutional deprivations. Plaintiff argues that Denver police officers have an expectation that their supervisors will turn a blind eye to or give them a slap on the wrist for excessive use of force allegations. Thus, argues Plaintiff, Defendant City and County of Denver has facilitated a culture of tolerating abuses.

As proof of this, Plaintiff cites to the recent resignation of Denver's Manager of Safety but does not explain how this resignation relates to the cause of his injury.[13] Plaintiff offers no other evidence to support his contention that a failure to discipline caused the constitutional violation at issue in this case. To create a genuine issue of material fact and survive summary judgment, Plaintiff must offer more than a mere scintilla of evidence. Plaintiff has failed to do so. Without such evidence, this Court cannot 'test the link' of causation necessary to avoid imposing *respondeat superior* liability on a municipality.

## CONCLUSION

Plaintiff bears a heavy burden in establishing municipal liability for the acts of individual police officers. Although seemingly harsh, this burden is consistent with Congress' refusal to impose *respondeat superior* liability upon state and local governments for the isolated actions of their employees. Even assuming the existence of a constitutional violation in this case, Plaintiff has failed to meet this burden. He has neither demonstrated that Defendants had notice of, or were deliberately indifferent to, the widespread use of excessive force in violation of the Fourth

---

[13] Again, although the evidence discussed *supra* at n. 9 could be used to support this argument, it is inadmissible for that purpose. *See supra* n. 10.

Amendment, nor the existence of a causal connection between the alleged failure to discipline

Defendant Officer Miller and his alleged injuries.  Absent such evidence, Plaintiff cannot

succeed on his municipal liability claims.

Accordingly, Defendants' Motion for Summary Judgment (doc. 42) is GRANTED.  The

claims against Defendant City and County of Denver and Defendant Officer Shawn Miller in his

official capacity are dismissed with prejudice, each party to bear their own costs.  Furthermore,

the claims against Defendants "Unknown Denver Police Department Officers 1-2, in their

official and individual capacities" are DISMISSED for failure to prosecute, each party to bear

their own costs.

The remaining issues at trial concern only Defendant Miller in his individual capacity.  In

order to ensure a timely and efficient resolution of this dispute, this matter is set for a Pre-Trial

Conference at 11:00 a.m. on March 22, 2011 in Courtroom A802 of the Alfred A. Arraj U.S.

Courthouse, 901 19th Street.  The parties shall prepare and submit a proposed Pre-Trial Order no

later than March 18, 2011.


Dated:  March 7, 2011                                         BY THE COURT:

                                                             **/s/ John L. Kane**
                                                             SENIOR U.S. DISTRICT JUDGE